UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL WADE HYDE,

    Petitioner,

v.                                       CASE NO: 8:11-cv-1649-T-23-AEP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

Michael Wade Hyde timely petitions[1] for the writ of habeas corpus under 28 U.S.C. § 2254 and challenges the validity of his state convictions imposed after a guilty plea.

## **PROCEDURAL AND FACTUAL BACKGROUND**

On October 26, 2004, Hyde pleaded guilty in seven separate cases[2] to various counts of armed robbery, armed kidnapping, burglary of a structure, grand theft, and criminal mischief, all committed in Hillsborough County, Florida, in late 2002 and

---

   [1] *See* docket 1.

   [2] *See* docket 7, Exh. A3 (judgment and sentence in case no. 03-1611 on one count of armed robbery and four counts of armed kidnapping), Exh. A4 (judgment and sentence in case no. 03-1635 on one count of armed robbery and three counts of armed kidnapping), Exh. A5 (judgment and sentence in case no. 03-1643 on one count of attempted armed robbery), Exh. A6 (judgment and sentence in case no. 03-1809 on attempted robbery and armed kidnapping), Exh. A7 (judgment and sentence in case no. 03-1811 on armed robbery), and Exh. A8, pp. 8-9 (case nos. 03-1531 and 03-1544 each include one count of burglary of a structure, grand theft and criminal mischief).

early 2003.³ On July 21, 2004, before the rearraignment, trial counsel moved to suppress Hyde's confession.⁴ On August 9, 2004, based on *Faison v. State*, 426 So. 2d 693 (Fla. 1983),⁵ trial counsel moved to dismiss the charge of armed kidnapping in three of the cases.⁶ Before any testimony at the October 26th hearing on the motions, the assistant state attorney informed the trial court:

> Mr. Hyde has several cases pending before Your Honor. Several of them involved armed kidnappings and armed robberies at seven different locations. He is a PRR [Prison Releasee Reoffender]. He is looking at life. . . . [Regarding plea negotiations] We came back with a term of years. It's my understanding that he has rejected all of those offers. We even came back with coming off of the PRR to resolve it, for 42, which is bottom of the guideline years. He has rejected all of those. And, obviously, this is something that, if he were to accept, the State would request that he accept it prior to any of these motions being heard.⁷

Trial counsel asked for a brief recess during which Hyde entered into written plea agreements.⁸ The trial court accepted Hyde's agreement to forty years in prison, all

---

   ³ *See* docket 7, Exh. A8, pp. 14-18.

   ⁴ *See* docket 7, Exh. A1.

   ⁵ *See* docket 7, Exh. A2 (motions to dismiss). In the motions, trial counsel relied on *Faison* in arguing that "the movement and confinement of the victims was slight, inconsequential and merely incident to the robbery within the interior of the restaurant."

   ⁶ *See* docket 7, Exh. A2. The three cases include: Case no. 03-1611 (four victims of armed robbery and armed kidnapping at Stacy's Buffet); Case no. 03-1635 (three victims of armed robbery and kidnapping at Cracker Barrel); and Case no. 03-1809 (two victims of armed robbery and armed kidnapping at Beef O'Brady's).

   ⁷ *See* docket 7, Exh. A8, pp. 2-3.

   ⁸ *See* docket 7, Exh. A8, pp. 4-7.

sentences concurrent.[9] The convictions and sentences were entered that day,[10] and no direct appeal was taken.

Hyde filed a motion[11] and an amended motion[12] for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure,[13] and raised four grounds of ineffective assistance of counsel.[14] After an evidentiary hearing on October 24, 2007,[15] the post-conviction court denied the motion and the amended motion on May 29, 2008.[16] The post-conviction court found, consistent with trial counsel's testimony, (1) that trial counsel had reviewed the merits and explained the substance of the motions with Hyde; (2) that trial counsel had not coerced Hyde but rather had

---

[9] *See* docket 7, Exh. A8, pp. 8-14, 18-19.

[10] *See* docket 7, Exhs. A3, A4, A5, A6 and A7.

[11] The motion was filed on April 13, 2006. *See* docket 1, App. B.

[12] The amended motion was filed on May 2, 2007. *See* docket 1, App. B.

[13] *See* docket 1, App. B. Hyde initially filed a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a), which was denied. *See* docket 7, Exh. B1 (motion) and Exh. B2 (order denying motion to correct an illegal sentence). The denial was affirmed *per curiam*. *See* docket 7, Exh. B3. *Hyde v. State*, 920 So.2d 630 (Fla.Dist.Ct.App. 2006) [table]. The mandate issued on February 22, 2006. *See* docket 7, Exh. B4.

[14] *See* docket 1, App. B. The first ground alleged the involuntariness of the plea based on counsel's failure to give Hyde a copy of the motion to suppress and to explain adequately the merits of the motion before Hyde pleaded guilty, which Hyde claims would have made him aware that he should not have pleaded. The second ground asserted counsel's failure to explain the substance of the motions to dismiss some of the armed kidnapping charges, specifically all three elements of the *Faison* test were not met relating to confinement. The third claim states that counsel pressured Hyde into pleading as a result of the coercive environment counsel created at the hearing held October 26, 2004. The fourth ground asserts the cumulative error raised in the first three grounds committed by his ineffective counsel resulted in manifest injustice.

[15] *See* docket 1, App. A (transcript of evidentiary hearing).

[16] *See* docket 1, App. B.

explained the strengths and weaknesses of the case and advised that a plea was in Hyde's best interest; and (3) that trial counsel was prepared for trial. Hyde timely appealed.[17] Hyde's appellate counsel argued that trial counsel was ineffective for failing to review with Hyde the pending motions to dismiss and to suppress and that the plea was therefore involuntary.[18] The order of denial was affirmed *per curiam* without opinion on August 28, 2009.[19]

While the appeal was pending and almost one year later on May 27, 2009, Hyde filed a motion to vacate the May 29th order on appeal.[20] Hyde filed the motion to alert the state court that his trial counsel had not told the truth at the evidentiary hearing.[21] Hyde had obtained on July 10, 2008, the visitor's log from the Hillsborough County Sheriff's Department. The log showed that trial counsel visited the jail twice in 2003 and twice in 2004 – on January 4, 2004, and October 24, 2004,[22] which were not close to the filing of the motions in July and August, 2004. Hyde alleged that the log refuted trial counsel's testimony that he visited the jail to discuss the motions with Hyde before filing the motions. Hyde claimed that trial counsel's

---

[17] *See* docket 7, Exh. C1 and C2 (initial and answer briefs in appeal no. 2D08-2994).

[18] *See* docket 7, Exh. C1.

[19] *See* docket 1, App. D (affirmance in appeal no. 2D08-2994). *Hyde v. State*, 17 So.3d 295 (Fla.Dist.Ct.App. 2009) [table]. The mandate issued September 29, 2009. *See* docket 1, App. D.

[20] *See* docket 1, App. C, Exh. E.

[21] *See* docket 7, Exh. D1.

[22] *See* docket 1, App. C, Exh. D.

false testimony constituted intrinsic fraud.  On June 12, 2009, the trial court dismissed the motion without prejudice for lack of jurisdiction because the appeal from the May 29th order was still pending.  Hyde appealed from the June 12th order of dismissal.[23]  The June 12th order was affirmed *per curiam* without opinion on March 5, 2010.[24]  The mandate issued on March 30, 2010.[25]

Six days later on April 5, 2010, Hyde renewed the Rule 3.850 motion directed to the May 29th order.[26]  Hyde realleged that he had obtained the visitation log, which showed that Hyde's trial counsel had not visited him before he moved to suppress and to dismiss on July 21, 2004, and August 9, 2004, respectively.  Hyde argued that the log proved that his trial counsel lied at the evidentiary hearing on the motion for post-conviction relief. The post-conviction court denied the motion on May 4, 2010, and found in pertinent part:

> [W]ith due diligence, Defendant could have discovered the Official Certified Attorney's Visitation Log from the Hillsborough County Sheriff Detention (Jail) Facility prior to the filing of his initial April 18, 2006, rule 3.850 motion, his May 2, 2007, amended rule 3.850 motion, and his October 24, 2007, evidentiary hearing. Consequently, the Court finds Defendant's April 16, 2010, rule 3.850 motion alleging his newly discovered evidence claim is time-barred.

---

[23] *See* docket 1, App. C, Exh. E.

[24] *See* docket 1, App. D (affirmance in appeal no. 2D09-3322). *Hyde v. State*, 29 So.3d 1126 (Fla.Dist.Ct.App. 2010) [table].

[25] *See* docket 1, App. D.

[26] *See* docket 1, App. C.

Hyde timely appealed the order of denial, but the order was affirmed *per curiam*.[27] The mandate issued on August 10, 2011.[28]

## GROUNDS FOR FEDERAL HABEAS RELIEF

Hyde timely filed his petition for writ of habeas corpus on July 20, 2011. Hyde asserts that he was denied the right to effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution (1) when trial counsel failed to review with Hyde the contents and the merits of the motion to suppress Hyde's statements and the motions to dismiss the armed kidnapping charges; (2) when trial counsel coerced Hyde's plea by berating him for wanting a trial, even after Hyde had repeatedly rejected the prosecution's offers; and (3) when trial counsel committed an intrinsic fraud by testifying untruthfully at the Rule 3.850 evidentiary hearing that counsel reviewed the motions with Hyde. Hyde contends that, if his trial counsel had reviewed the substance of the motions with him, rather than coercing him, he would not have pleaded guilty.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Hyde's petition. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840, 121 S.Ct. 103, 148 L.Ed.2d 62 (2000). Section 2254(d) creates a highly deferential standard which does not permit federal habeas

---

[27] *See* docket 7, Exh. E3.

[28] *See* docket 7, Exh. E4.

relief with respect to a claim adjudicated on the merits in state court unless either (1) the "contrary to" or "unreasonable application" clauses of subsection (d)(1) are met or (2) the state court decision was based on "an unreasonable determination of the facts in light of the evidence presented" under subsection (d)(2). *See Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (interpreting the deferential standard); *Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001) (explaining the standard and noting the presumption of correctness attributed to a factual issue decided by state court).

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 525 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holding of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The AEDPA modified a federal habeas court's role in reviewing the state prisoner applications in order to prevent federal habeas 're-trials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "The AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779, 130 S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010). *See also Cullen v. Pinholster*, ____ U.S. ____ , 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (stating section 2254(d) creates "a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt,'") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court affirmed the denial of both Hyde's first Rule 3.850 motion to vacate and the subsequent Rule 3.850 motion filed on the basis of newly discovered evidence.[29]

### Standard for Ineffective Assistance of Counsel

Hyde claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Water v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th

---

[29] *See* docket 1, App. C, Exh. B; docket 7, Exh. E3.

Cir. 1994)). A petition claiming ineffective assistance of counsel for counsel's performance must meet the two-part standard established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a *prima facie* claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88; *Sims v. Singletary*, 155 F.3d 1297, 1305. Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 688.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Hyde must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691-92. To meet this burden, Hyde must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Hyde must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S.Ct. at 788. *See also Pinholster*, 131 S.Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

The *Strickland* test applies to a challenge to a guilty plea based on ineffective assistance of counsel in the plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (holding that a voluntary guilty plea does not bar the collateral review of an ineffective assistance of counsel claim that bears upon the voluntariness of the plea). The first element of the *Strickland* test stays the same in the plea context: a defendant must show that counsel's performance was constitutionally deficient, which means a performance below an objective standard of reasonableness. To establish the prejudice element of *Strickland*, "a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59. Failure to establish either element foregoes the necessity to address the remaining element. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Hyde argues that counsel's errors render his plea involuntary and that, but for counsel's errors, he would not have pleaded guilty and would have insisted on a trial.

## ANALYSIS

### Ground One

Hyde contends that his trial counsel rendered ineffective assistance by failing to explain the substance and merit of the motion to suppress his statement and the

motions to dismiss some of the armed kidnapping charges.[30]  In the motion to suppress, trial counsel argued that *Miranda* warnings were too late in the interrogation – after Hyde's unrecorded statement but before his recorded statement. Hyde gave a recorded statement to Detective Lowe of the Hillsborough County Sheriff's Office at 11:20 a.m. on January 31, 2003; implicated himself in several robberies; and exonerated his girlfriend and her son, Sonia Collins and Michael Pierce.  The recorded interview began at 10:48 a.m. by Detective Lowe's reading to Hyde the consent form and by Hyde's stating he could not "do it."[31]  After signing the consent form between 10:48 a.m. and 11:20 a.m., Hyde recorded a statement. Before 10:48 a.m., Hyde had confessed after the initial questioning by Detective Lowe.  The issue raised in the motion is whether the repeated confession, which was after *Miranda* warnings, is admissible.

With evidence of the jail's visitation log, Hyde challenges the trial counsel's veracity.  Based on the number of times trial counsel visited Hyde in jail and the timing of those visits, Hyde claims that trial counsel lied at the evidentiary hearing. Trial counsel testified at the evidentiary hearing that he visited Hyde in jail "maybe three or four maybe five" times but did not recall meeting with Hyde on October 24, 2004, two days before the plea.  Trial counsel talked on the telephone with Hyde in

---

[30]  The motions to dismiss argued that some of the kidnapping charges should be dismissed based on *Faison* because the movement and confinement of the victims was "slight, inconsequential, and merely incidental" to the particular robbery.

[31]  Presumably, by "do it" Hyde meant "record a statement."

the jail about the case strategy and the merits of the motions. Trial counsel talked with Hyde at least one time in person at the jail. According to trial counsel, Hyde was fully apprised of each motion, including the content of the motion and how granting the motion might affect his cases. Trial counsel told Hyde that, in view of all the other evidence against Hyde, neither the motion to suppress nor the motions to dismiss, if granted, would dispose of the charges. Hyde testified that trial counsel visited him in jail four times; that one of those times was October 24, 2004; and that the motions were not discussed at the October 24th visit.

Trial counsel testified that he informed Hyde that the motions would not dispose of the case. Trial counsel testified about significant problems Hyde faced if he went to trial. Collins and Pierce were to testify against Hyde. At least one cash register taken during one of the robberies was found in Hyde's house. Ski masks, which were used in some of the robberies, were found in Hyde's attic. Additionally, Hyde told his landlord about the robberies, and the landlord had shown the police where the cash register and ski masks were located. The landlord was to testify against Hyde. As a pretrial releasee re-offender, Hyde faced a life sentence, and the assistant state attorney had not previously been receptive to a plea offer. When asked why the prosecutor finally lowered the offer to forty years, trial counsel stated that he guessed she was worn down by his constant attempts at asking for a better offer.

In denying Hyde's claim of failure to explain the merits of the motions and trial counsel's false testimony, the trial court found trial counsel's testimony credible over

Hyde's. The trial court was satisfied that trial counsel reviewed with Hyde the merits of the motions and that Hyde decided the plea to forty years was in his best interests. The trial court further found that the visitation log did not undermine trial counsel's testimony.

The state court's credibility determination is presumed correct. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the petitioner's.), *cert. denied*, 526 U.S. 1047, 119 S.Ct. 1350, 143 L.Ed.2d 512 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161, 115 S.Ct. 1125, 130 L.Ed.2 1087 (1995). Relying only upon his unsupported contention, Hyde fails to overcome the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Hyde fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this ground. *See* 28 U.S.C. § 2254(d).

This ground, therefore, can be denied under *Strickland's* deficiency element without addressing the prejudice element. The record of the evidentiary hearing supports the trial court's finding that trial counsel fully discussed and explained the contents and merits of the motion to suppress and motions to dismiss. The record further supports the trial court's finding that Hyde understood that granting the

motions would not dispose of the case. Even Hyde's additional newly discovered evidence of the jail's visitation log does not alter the findings. The log does not disprove that trial counsel conversed with Hyde on the telephone about the motions. On the contrary, the log is evidence that, on at least four occasions before Hyde pleaded guilty, his trial counsel met with him. The state decision resulted in a reasonable application of *Strickland* under the deficiency element and a reasonable determination of the facts in light of the evidence.

## Ground Two

Hyde maintains that his counsel was ineffective for coercing his plea of guilty. Hyde complains that trial counsel attempted to negotiate a plea with the prosecution without Hyde's authority and that trial counsel admonished Hyde for not accepting the offers. The events of October 26, 2004, the day the motions were set for hearing, were explained by trial counsel at the evidentiary hearing:

> [Just before Detective Lowe took the stand] they gave me an offer, it started at 50 years, it went to 45 years, and on the record the offer was 42 years. [Hyde] rejected that offer on the record. . . . [At the time Detective Lowe took the stand and began to state his name, Hyde] and I made eye contact, there was some discussion amongst us as to whether or not we ought to take a second and talk about this. I think his allegation in his motion is that I abruptly stopped the proceedings and attempted to force him into a plea, which is untrue. . . . we decided amongst us, he and I, to take a five minute break and talk about this a little bit more. The offer went down to 40 years, I spoke to [Hyde] about it and we again went over the merits of the motions and what would happen even if the motions were granted, that we would still be in a trial posture, and it still didn't look very good in our best case scenario, and

> that's having everything granted. . . . at that time [Hyde] decided that it would be in his best interests to take the deal . . . .[32]

Hyde testified, nonetheless, that his trial counsel coerced his plea, despite Hyde's unequivocal rejections.[33] Hyde testified that he told his counsel on the Sunday, Monday, and Tuesday before the plea that he rejected the offer of forty-two years.[34] Hyde admitted, however, that the plea colloquy confirms that he agreed that his trial counsel prepared extensively for the defense of his case, including the motions to suppress and dismiss.[35] When asked if the real reason for his entering a plea was the seven life sentences he was facing, Hyde answered that he knew that fact

---

[32] *See* docket 1, App. A (transcript of post-conviction hearing), p. 13-14.

[33] *See* docket 1, App. A, p. 72.

[34] *See* docket 1, App. A., p. 72.

[35] *See* docket 1, App. A., pp. 72-73; docket 7, Exh. A-8, pp. 6-7. The following transpired at the plea hearing:

> [Trial counsel]: I do want the Court to know that we were prepared this morning to argue motions to suppress statements, argue motions to dismiss counts of various informations. . . . [Petitioner] knows that our option would have been to hear those motions. . . . We've spent several months in, in preparation for these trials, and [Petitioner] knows that our option would have been to hear those motions.
>
> . . . .
>
> [Trial Court]: You heard the comments made by your attorney with regard to various motions to suppress and the preparation that he's done on behalf of your defense?
>
> [Petitioner]; Yes, sir.
>
> [Trial Court]: Are you in agreement with the comments he's made?
>
> [Petitioner]: Yes, sir.

*See* docket 7, Exh. A-8, pp. 6-7.

but that trial counsel used the life sentences to exert emotional pressure on him to plead.[36]

The trial court found trial counsel's testimony credible and denied Hyde's claim of ineffective assistance of counsel in coercing the plea. The trial court relied on trial counsel's testimony that he explained to Hyde the risk of trial, that he was adequately prepared for trial, and that he did not coerce Hyde to plead guilty. The state-court decision resulted in a reasonable application of *Strickland* under the deficiency element and a reasonable determination of the facts from the evidence.[37]

### Ground Three

Based on the newly discovered evidence of the jail's visitor log, Hyde's subsequently renewed Rule 3.850 motion sought to vacate the order denying post-conviction relief. Hyde contended that if the trial court believed trial counsel and if trial counsel's testimony was untruthful, the order was the product of fraud on the court. Hyde argued that the log (1) proved that trial counsel did not discuss the merit and consequence of the motions with him before the day of the plea and (2) proved that trial counsel lied at the evidentiary hearing. The log showed that trial counsel

---

[36] *See* docket 1, App. A, pp. 69-71.

[37] The respondent argues that ground two is procedurally barred because Hyde did not address this ground in his initial brief in the appeal of the denial of the first motion for post-conviction relief. Failing to raise an issue on appeal, even though raised before the trial court, waives that issue on appeal. *Johnson v. State*, 660 So. 2d 637, 645 (Fla. 1995), *cert. denied*, 517 U.S. 1159, 116 S.Ct. 1550, 134 L.Ed.2d 653 (1996). To the extent the issue on appeal was not couched in terms of coercion, the body of the initial brief contains argument regarding the coercive nature of the plea. Thus, this order addresses ground two.

visited the jail on March 24 and August 1 in 2003 and on January 4 and October 24 in 2004. The motions were filed July 21, 2004, and August 9, 2004, respectively. Hyde reasoned that, because the dates of visitation were not close to the dates of the motions, trial counsel neither discussed the motions with Hyde before their filing nor gave him a copy of the motions.

The trial court denied the renewed motion as time-barred and cited *Parks v. State*, 944 So.2d 1230, 1231 (Fla.Dist.Ct.App. 2006). To move – beyond the two-year limitation and based on newly discovered evidence – to vacate an order denying post-conviction relief, the movant must establish that the facts supporting the claim "could not have been ascertained by the exercise of due diligence" and that the claim is "made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence." *See Fla.R.Crim.P.* 3.850(b)(1). The trial court found that with due diligence the visitor log could have been discovered before the filing of the initial Rule 3.850 motion on April 18, 2006; before the filing of the amended motion on May 2, 2007; and before the evidentiary hearing on October 24, 2007. The state court decision resulted in a reasonable application of established Florida law and a reasonable determination of the facts from the evidence.[38]

---

[38] Although the trial court did not reach the merits of the ineffective assistance claim based on trial counsel's untruthful testimony, it is evident, as argued in the appellate brief, that trial counsel testified that he had lengthy discussions about the merits and substance of the motions with Hyde on the telephone between August and October 26, 2004. Trial counsel testified that Hyde was "was happy with the motions" and that Hyde understood the basis of the defense and the advice that Hyde's best interests would be served by entering a plea in light of his eight prior felony convictions, the testimony of his girlfriend and her son, and the evidence of the ski masks and cash register.

(continued...)

The petition for the writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is directed to enter judgment in favor of the respondent, to terminate any pending motion, and to close this case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Hyde is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Hyde must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Hyde is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

---

$^{38}$(...continued)

Even if the log had been obtained and presented to the trial court in a timely fashion, the log does not establish that trial counsel was untruthful. Trial counsel testified that he made from three to five visits to the jail but could not remember the dates. Hyde testified that trial counsel visited him four times in jail. The log confirms that trial counsel visited on four occasions. Any assertion that nothing was discussed during the jail visits about the content and merits of the motions is negated by the telephone calls between trial counsel and Hyde.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Hyde must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 3, 2014.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE